RURAL HOME LODGE No. 1720 *v*. SEA.

Opinion delivered March 29, 1920.

1. EVIDENCE—BEST EVIDENCE—CONSTITUTION AND BY-LAWS OF BENEFIT SOCIETY.—In an action against a benefit society for sick and death benefits, parol evidence as to a member's right to benefits and his obligation to pay dues while sick was inadmissible, as the constitution and by-laws of the society were the best evidence of a member's rights and obligations.

2. INSURANCE BENEFIT SOCIETY—AUTHORITY TO SUSPEND MEMBER.—In an action on a benefit certificate where the defense was that the member had been found by the local lodge to be able to work and had been suspended for nonpayment of dues, the authority to try the member and suspend him should have been shown by producing the rule, regulation or by-law conferring such authority.

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; reversed.

*S. A. Jones* and *Carmichael & Brooks,* for appellant.

1. Appellee admitted that Charles Sea, as a member, was non-financial and did not pay any dues from

1910 until his death. The rules and regulations of the order were best evidence and could not be overcome by proof of custom. 81 Ark. 512; 104 Ark. 538; 101 *Id.* 353. Parol evidence was not admissible.

2. A collecting agent has no authority to waive the conditions in a policy. 129 Ark. 159. The by-laws of the order must be complied with. 135 Ark. 65.

3. Appellee did not introduce any by-law or rule excusing the delinquency. Parol testimony was not admissible. *Supra.*

4. Appellee did not overcome the suspension of Charles Sea by the lodge.

5. Appellee did not show that Charles Sea was not in such mental condition as to make the assignment. 70 Ark. 364.

*Clifton W. Gray* for appellee.

1. The evidence was legally sufficient to sustain the verdict. He paid all assessments until he became sick, and thereafter his sick benefits to which he was entitled were sufficient to pay all dues, etc., and all assessments.

2. The testimony as to the custom of the order was competent, but if incompetent it was not prejudicial, and the judgment is right under the law. The present case is ruled by 99 Ark. 204; 107 *Id.* 102; 111 *Id.* 514. The local lodge had the right and it was its duty to apply the sick benefits to the payment of any assessments falling due. 111 Ark. 444; 104 *Id.* 538.

SMITH, J. Charles Sea was initiated and became a member of Rural Home Lodge No. 1720, Grand United Order of Odd Fellows, and by virtue of this membership was a member of Odd Fellows' Benefit Association, District Grand Lodge No. 11, Grand United Order of Odd Fellows in America. As such member he was the holder of Benefit Certificate No. 2715. This certificate was issued February 1, 1910, and named his wife as beneficiary. Thereafter, on April 1, 1914, another certificate was issued to Sea, but it is not clear why this was done, but it appears to have been issued in substitution for the first

certificate. This last certificate named Malinda Sea, a sister of the member, as beneficiary. This suit was brought upon that certificate by Malinda Sea against the local lodge for sick benefits and the benefit association for the amount of insurance covered by the membership certificate, and there was a judgment in her favor on both counts, and this appeal is from that judgment.

Until he became ill, Sea paid dues, as did all other members, of fifty cents per month to the benefit association, in consideration whereof his membership certificate recited that his beneficiary would be entitled, at his death, to a payment of $250 insurance and an allowance of $50 for funeral expenses. The right to this money, however, was contingent upon Sea being in good standing in his lodge at the time of his death—payment of dues being an essential to good standing.

In addition to these dues Sea, as well as all other members, was required to pay to the local lodge of which he was a member quarterly dues of $1.25 per quarter, in consideration for which it is contended that the local lodge became bound to pay sick benefits of $3 per week for four weeks and thereafter $1.50 per week so long as the member remained ill.

Sea paid no dues after he became ill in 1910, but it is urged that he did not become delinquent, because no sick benefits were ever paid to him, and these benefits to which he was entitled would have more than paid all dues.

It appears to be conceded that each local lodge made its own rules in regard to sick benefits, subject to the general rules of the grand lodge, and there is conflicting testimony as to the practice or custom in the lodge of which Sea was a member. There was testimony that the duty to pay sick benefits continued as long as the member remained sick; but there was also testimony that the local lodge was under no duty to pay the sick benefits for more than one year, if the member remained ill for a longer period.

It was shown that because of his failure to pay dues, and because of a finding by the local lodge that he had

become able to work, Sea had been suspended from membership. It is insisted, however, that that finding was made without evidence to support it, and that the suspension was unauthorized. Over appellee's objection an instruction was given which told the jury to find for defendant on the question of sick benefits, if they found that the local lodge, after a fair investigation, had decided that Sea was not entitled to sick benefits after March 1, 1915.

A witness named Gay, who was a member of the order, but who belonged to a different local lodge from the one in which Sea held his membership, was examined touching the customs of the different lodges and the laws of the order in regard to payment of sick benefits. Over the objection of defendants this witness was allowed to answer the following questions:

"Q. If a member of a lodge—local lodge—who was a member of a lodge in July, 1910, should become sick during that month, holding a benefit certificate of that sort, and remain sick for a period of five years before he died, dying at the end of five years, what sick benefits under the rules and laws of the order would he be entitled to?

"Defendants, through their attorney: Now, if your Honor please, I think that the rules and regulations defining that would be the best proof. Each local lodge, if your Honor please, fixes their own amount of sick benefits, and if they have any rules which say he would be entitled to so much, the rules would be the best proof.

"Mr. Gray: Well, we have the rules here. I am just trying to get at the amount, is all."

The witness then answered that the sick benefits amounted to $3 for four consecutive weeks, and if sick for a longer period the benefits would be $1.50 per week thereafter.

The witness was also asked: "Q. If a man in the lodge is sick for five years under a certificate that will be shown you providing for three dollars for the first four weeks and a dollar and a half for subsequent weeks dur-

ing his illness, and he is sick five years, would that man have in the local lodge a sufficient amount to take care of all of his indebtedness to the lodge? A. I think so. You see, the member—if a member in my lodge is sick four weeks, or for that length of time, for five years, they give him full benefit at the rate of three dollars a week for four consecutive weeks and then thereafter pay him one dollar and a half a week as long as he is sick; if he is financial when he is taken sick, he can not become nonfinancial.''

The witness was further asked: ''Q. I want to ask you the question whether or not there has been, during the time that you have been a member, a general custom of the order, whether or not during the time, the nine years you have been in the order, it has been a custom of the order, under written custom of the order giving to local branches that if a member was in good standing and took sick, became sick, as long as he remained ill he could not become nonfinancial? A. Yes, sir; that's the custom.''

We think the objections to these questions should have been sustained. Evidently there was a constitution and by-laws, for all of the witnesses testified about them, yet they were never offered in evidence. By the terms of the certificate sued on the member was required to conform to and was bound by the rules and regulations and constitution of the order. It appears the litigants here were in possession of these rules at the trial from which this appeal comes, yet they were not introduced in evidence. These rules were themselves the best evidence of the member's rights and the obligations of his lodge to him, and the court should have sustained the objections made. *Supreme Lodge K. of P.* v. *Robbins,* 70 Ark. 364; *Hughes* v. *State,* 109 Ark. 403, 406.

What we have just said is equally applicable to the testimony in regard to the trial and suspension of Sea by the local lodge of which he was a member. The authority to conduct this trial, if authority existed, should have

been shown by the production of the rule, regulation or by-law conferring that authority.

For the errors in admitting the testimony set out above the judgment is reversed and the cause remanded.